IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-131

 No. 523A20

 Filed 5 November 2021

 IN THE MATTER OF: C.K.I.

 Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from order entered 5 October

 2020 by Judge Robert P. Trivette in District Court, Dare County. This matter was

 calendared in the Supreme Court on 30 September 2021 but determined on the record

 and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules

 of Appellate Procedure.

 No brief filed for petitioner-appellee mother.

 No brief filed for appellee Guardian ad Litem.

 Edward Eldred for respondent-appellant father.

 HUDSON, Justice.

¶1 Respondent, the father of the minor child, C.K.I. (Charlie),1 appeals from the

 trial court’s order terminating his parental rights on the ground of willful

 abandonment. We affirm.

 I. Factual and Procedural Background

¶2 Petitioner and respondent were in a relationship that began during the

 1 A pseudonym is used throughout the opinion to protect the child’s identity and for

 ease of reading.
 IN RE C.K.I.

 2021-NCSC-131

 Opinion of the Court

 summer of 2013 but never married. The relationship suffered from substance abuse

 and domestic violence. Charlie was born in February 2014. The couple lived together

 for a month after Charlie’s birth, then separated. Following a domestic incident

 between petitioner and respondent on 4 March 2014 during which Charlie was

 present, the Dare County Department of Social Services (DSS) initiated an

 assessment for child neglect. DSS recommended counseling and informed the parents

 that the child should have a sober caregiver at all times and should not be exposed to

 acts of domestic violence. DSS also responded to incidents of domestic violence in

 April and June 2014.

¶3 Following a 5 June 2014 incident, DSS made a safety resource arrangement

 with Charlie’s maternal grandfather and step-grandmother who agreed that the

 minor child would stay in their home until DSS determined otherwise. DSS referred

 the parents to mental health and substance abuse counseling. Initially, the parents

 were not consistent with their counseling, were unable to maintain appropriate

 housing for an infant, failed to address issues related to domestic violence, and failed

 to demonstrate an ability to provide food, clothing, and shelter for the minor child.

 On 18 September 2014, DSS filed a juvenile petition alleging the minor child was a

 neglected juvenile. By January 2015, petitioner resided with Charlie’s maternal

 grandmother. Respondent resided with his sister. Charlie continued to reside with

 his maternal grandfather and step-grandmother. Following a 28 January 2015
 IN RE C.K.I.

 2021-NCSC-131

 Opinion of the Court

 hearing, the trial court entered a dispositional order on 23 February 2015 in which it

 adjudicated Charlie a neglected juvenile and granted custody to the maternal

 grandfather and step-grandmother. The matter was converted to a Chapter 50 action,

 and DSS was relieved of further responsibility. The court ordered that petitioner and

 respondent have separate weekly supervised visitation for two hours.

¶4 Following the court’s 23 February 2015 dispositional order, petitioner

 “substantially changed her life.” She established a safe, stable, and appropriate

 residence and maintained a steady job which provided the means and ability to

 provide financially for the minor child. By April 2017, petitioner had provided for the

 child’s basic needs for over a year, and the child had been living with her for more

 than six months. With the support of maternal grandfather and step-grandmother,

 petitioner petitioned for custody of the minor child. Respondent was served with

 notice of the custody hearing but failed to appear or make any communication with

 the court regarding the matter. By order entered 12 April 2017, the trial court

 concluded that it was in the best interests of the minor child that petitioner be

 granted custody, and the court awarded petitioner sole legal and physical custody of

 the minor child.

¶5 On 6 November 2019, petitioner filed a petition for termination of respondent’s

 parental rights. Petitioner alleged that grounds existed to terminate respondent’s

 parental rights on grounds of neglect and abandonment. Petitioner alleged that
 IN RE C.K.I.

 2021-NCSC-131

 Opinion of the Court

 respondent had not seen the minor child since he was four months old and had not

 provided medical care or financial support for the child since he was one month old.

 Moreover, petitioner alleged that respondent has no relationship with the minor child

 and had not pursued a relationship since March 2014.

¶6 Respondent answered the petition to terminate his parental rights denying

 petitioner’s allegations regarding grounds to terminate his parental rights. The court

 appointed a guardian ad litem for the minor child on 22 January 2020. A hearing on

 the matter took place on 25 September 2020 during which the court heard testimony

 from petitioner, the maternal grandfather, the maternal grandmother, Charlie’s half-

 sibling’s paternal grandmother, petitioner’s boyfriend, respondent, respondent’s

 girlfriend, and the guardian ad litem. On 5 October 2020, the trial court entered its

 order concluding that grounds existed to terminate respondent’s parental rights and

 that termination was in the best interests of the child. Respondent appeals.

 II. Analysis

¶7 Our Juvenile Code provides a two-stage process for terminating parental

 rights. N.C.G.S. §§ 7B-1109, -1110 (2019). At the initial or adjudicatory stage, the

 burden is on the petitioner to establish the existence of any ground for termination

 alleged under N.C.G.S. § 7B-1111(a) based on clear, cogent, and convincing evidence.

 N.C.G.S. § 7B-1109(e)–(f) (2019). “We review a trial court’s adjudication under

 N.C.G.S. § 7B-1109 ‘to determine whether the findings are supported by clear, cogent
 IN RE C.K.I.

 2021-NCSC-131

 Opinion of the Court

 and convincing evidence and the findings support the conclusions of law.’ ” In re

 C.B.C., 373 N.C. 16, 19 (2019) (quoting In re Montgomery, 311 N.C. 101, 111 (1984)).

 “[F]indings of fact are binding ‘where there is some evidence to support those findings,

 even though the evidence might sustain findings to the contrary.’ ” In re R.D., 376

 N.C. 244, 258 (2020) (quoting In re Montgomery, 311 N.C. at 110–11). “Unchallenged

 findings are deemed to be supported by the evidence and are ‘binding on appeal.’”

 In re K.N.K., 374 N.C. 50, 53 (2020) (quoting In re Z.L.W., 372 N.C. 432, 437 (2019).

 “The trial court’s conclusions of law are reviewable de novo on appeal.” In re J.D.C.H.,

 375 N.C. 335, 337 (2020) (quoting In re C.B.C., 373 N.C. at 19).

¶8 Respondent contends that the trial court erred by terminating his parental

 rights on the grounds of neglect and willful abandonment. Respondent does not

 challenge the trial court’s findings of fact, rather he argues the evidence presented

 does not support the trial court’s conclusions on either ground. Because a single

 ground for terminating parental rights is sufficient to support a termination order,

 this Court can uphold the trial court’s order based on one ground without reviewing

 any remaining ground. In re J.S., 374 N.C. 881, 815 (2020).

¶9 A court may terminate parental rights upon a finding that “[t]he parent has

 willfully abandoned the juvenile for at least six consecutive months immediately

 preceding the filing of the petition or motion[.]” N.C.G.S. § 7B-1111(a)(7) (2019). “The

 most frequently approved definition is that abandonment imports any willful or
 IN RE C.K.I.

 2021-NCSC-131

 Opinion of the Court

 intentional conduct on the part of the parent which evinces a settled purpose to forego

 all parental duties and relinquish all parental claims to the child.” Pratt v. Bishop,

 257 N.C. 486, 501 (1962); see also In re N.M.H., 375 N.C. 637, 642 (2020). “Whether

 a biological parent has a willful intent to abandon his child is a question of fact to be

 determined from the evidence.” In re B.C.B., 374 N.C. 32, 35 (2020) (quoting In re

 Adoption of Searle, 82 N.C. App. 273, 276 (1986)). “Although the trial court may

 consider a parent’s conduct outside the six-month window in evaluating a parent’s

 credibility and intentions, the ‘determinative’ period for adjudicating willful

 abandonment is the six consecutive months preceding the filing of the petition.” In re

 N.D.A., 373 N.C. 71, 77 (2019) (quoting In re D.E.M., 257 N.C. App. 618, 619 (2018)).

 “If a parent withholds his presence, his love, his care, the opportunity to display filial

 affection, and willfully neglects to lend support and maintenance, such parent

 relinquishes all parental claims and abandons the child.” In re J.D.C.H., 375 N.C.

 335, 338 (2020) (cleaned up).

¶ 10 Here, the determinative six-month period is from 6 May to 6 November 2019.

 In support of its conclusion that grounds exist to terminate respondent’s parental

 rights based on willful abandonment, the trial court made the following unchallenged

 findings of fact:

 13. The parties lived together for periods of time prior to
 the birth of the juvenile. They lived together for
 about a month after the birth of the juvenile at the
 home of Petitioner’s mother. There was domestic
 IN RE C.K.I.

 2021-NCSC-131

 Opinion of the Court

 violence and substance abuse issues in the
 relationship. [DSS] took non-secure custody of the
 juvenile and placed the juvenile with Petitioner’s
 father. The juvenile matter was converted to a
 Chapter 50 Order giving custody to the [minor
 child’s] maternal grandfather. Petitioner later filed
 a motion to modify that Chapter 50 Order and was
 granted custody as previously set forth.

14. Respondent was slightly involved at birth. He
 attended at least one pre-natal appointment and
 was present at the birth. He helped to set up the
 juvenile’s nurse[r]y at Petitioner’s mother’s home.
 Once [DSS] became involved, Respondent’s
 involvement dwindled off and he was non-compliant
 with his case plan with the Department.

15. Since the juvenile was one month old, the
 Respondent has provided no support, either
 monetary or in-kind and he has not paid for medical
 care nor attended any medical appointments for the
 juvenile. The Respondent last saw the juvenile when
 the child was 4–6 months old. Since the juvenile was
 one month old, he has purchased or provided no
 birthday gifts or Christmas gifts and has not
 acknowledged those holidays in any fashion for the
 minor child.

16. Testifying on Petitioner’s behalf, her father and
 mother confirmed that Respondent only visited
 initially when the juvenile was living with
 Petitioner’s mother and that while the juvenile
 resided with Petitioner’s father, the Respondent did
 not visit. Both also confirmed that Respondent had
 provided no support, cards, or gifts that they were
 aware of and Respondent had never contacted either
 one of them to try to have contact with the juvenile.

....
 IN RE C.K.I.

 2021-NCSC-131

 Opinion of the Court

18. The Respondent admittedly had a terrible addiction
 to opioids. His criminal record was introduced
 with[out] objection from Dare and Currituck
 Counties which showed a variety of criminal
 convictions involving drugs as well as a
 misdemeanor conviction for tampering with a motor
 vehicle and for resisting an officer. He was convicted
 in Virginia for felony possession with intent to sell
 and deliver a Schedule I substance, heroin. Between
 his local jail time and his prison time in Virginia, he
 was incarcerated from October 2016 to July 2019. He
 also was in jail in North Carolina for periods of time
 prior to that.

19. There was conflicting testimony regarding
 Respondent’s contact with Petitioner while he was
 incarcerated. . . . [T]he Court finds that Respondent
 contacted Petitioner one time in December 2018.
 Petitioner asked Respondent to agree for the
 juvenile’s last name to be changed. Respondent
 disagreed and indicated he had a prison lawyer who
 told him all he had to do was file for custody when
 he was released and that he would get shared
 custody of the child and that he intended to do that.
 The parties argued and then hung up.

20. Despite indicating he was aware he could file an
 action to receive custody, Respondent has never filed
 an action to receive custody or visitation.

21. Respondent was released from prison in July 2019.
 Petitioner learned that he was out of prison via
 Facebook as he did not contact her or try to see the
 juvenile. Petitioner contacted Respondent’s
 grandmother to determine if he was out of prison
 and then Respondent contacted Petitioner from the
 grandmother’s phone. Petitioner again asked him to
 agree to change the child’s last name. He refused
 and indicated his intent to see the juvenile. Yet, he
 never followed through in any way with this intent
 IN RE C.K.I.

 2021-NCSC-131

 Opinion of the Court

 prior to the filing of the termination of parental
 rights action.

22. While Respondent was incarcerated, Petitioner kept
 in contact with his grandmother. She visited with
 the juvenile on occasion, and sent gifts and cards
 signed by her on the juvenile’s birthdays and
 Christmas. On one occasion when she was unable to
 see the child, she sent a card and a money card so he
 could buy a present for himself. She never indicated
 to Petitioner that the money card, gifts, or cards
 were from Respondent. Although Respondent
 asserts that the gifts and money provided by his
 grandmother were from him, there is no evidence to
 support such an assertion. Thus, the Court finds
 those items to be from the grandmother.

23. Respondent had a conduit to send money, cards,
 letters or gifts to the juvenile from himself. He could
 have written letters to the child to show his interest
 and even if Respondent would not have accepted the
 letters, his grandmother could have saved them to
 prove his interest. He failed entirely to do anything
 to support or show interest in the juvenile.

24. Petitioner never filed a child support action but she
 also never told Respondent or his grandmother that
 she would not accept support, money, or gifts for the
 juvenile. Both parties testified that Petitioner
 accused Respondent of never having supported the
 juvenile and having told Respondent that if he had
 gifts for the child, he should send them to him.
 Respondent failed to send support, money or gifts.

25. Based upon Respondent’s lack of involvement
 throughout the juvenile’s life, his apparent lack of
 interest during his incarceration and his failure to
 affirmatively do anything to assert his parental
 rights before the filing of this action, there is a
 reasonable probability that his lack of involvement
 IN RE C.K.I.

 2021-NCSC-131

 Opinion of the Court

 would continue.

26. Petitioner did not encourage Respondent to have
 contact with the juvenile. She told him to forget
 about the juvenile. Petitioner tried to keep in contact
 with Respondent’s sister but she was rebuffed.
 Respondent’s father died prior to Respondent’s
 incarceration and his mother was never involved
 with the juvenile. Petitioner did keep in touch with
 Respondent’s grandmother . . . .

27. Between the time the parties spoke in August 2019
 and filing of the action in November 2019,
 Respondent did not attempt to see the juvenile. He
 provided no support of gifts. He showed no further
 interest. He did not file an action to establish a
 relationship with the juvenile. After the termination
 of parental rights action was filed, Respondent was
 served and he established his relationship with his
 court appointed attorney. He began contacting
 Petitioner in early 2020.

28. The parties set up a meeting in March 2020 because
 Respondent wanted Petitioner to see for herself that
 he had changed. . . . Respondent did not show up at
 the meeting set up between the parties. Thereafter,
 Petitioner answered few of Respondent’s texts and
 he did not call her. Petitioner eventually blocked
 Respondent’s number on her phone. Petitioner did
 not encourage Respondent’s desire to have contact
 with the juvenile and did not allow such. (All of this
 exchange occurred months after the termination
 action was filed.)

29. The juvenile does not know who the Respondent is.
 He has not seen his father since he was 4–6 months
 old. From that time until the Respondent was
 incarcerated, Respondent did not attempt to contact
 the juvenile or the Petitioner and showed no
 interest. There is no bond between the Respondent
 IN RE C.K.I.

 2021-NCSC-131

 Opinion of the Court

 and the juvenile. The juvenile considers Petitioner’s
 boyfriend to be his father as he has raised him since
 he was 10 months old.

 30. The Petitioner lives . . . at the address listed on the
 petition for termination of parental rights.
 Respondent claims to have only learned her address
 at the hearing but admitted was served with the
 petition on November 7, 2019 and that he read the
 petition (which contained Petitioner’s address) . . . .

¶ 11 Respondent argues that the findings do not support a conclusion of his

 abandonment for three reasons. First, while he did not initiate adversarial legal

 proceedings to force petitioner to allow respondent to see the minor child, respondent

 took steps toward that goal. As stated in his brief to this Court, respondent called

 petitioner and said “(1) he wanted to be involved in Charlie’s life, (2) he was going to

 see Charlie, and (3) he was going to be a father to Charlie.”

¶ 12 Second, after petitioner refused to allow respondent to see the minor child, she

 asked respondent to sign papers allowing her to change the minor child’s name.

 However, as respondent contends, petitioner could have petitioned to change the

 minor child’s name without his consent if she believed respondent had abandoned the

 minor child. By asking respondent’s consent to change the minor child’s name,

 respondent contends, petitioner evidenced a belief that respondent did not abandon

 the minor child.

¶ 13 Third, respondent refused to sign papers allowing petitioner to change the

 minor child’s name. In sum, respondent argues that this is not a case of a parent
 IN RE C.K.I.

 2021-NCSC-131

 Opinion of the Court

 doing nothing for six months preceding the filing of a termination action, but one of

 a parent who asserted his intent to be a father to his son without aggressively

 inserting himself into his son’s life immediately after completing three years in

 prison. We disagree.

¶ 14 “[I]f a parent withholds his presence, his love, his care, the opportunity to

 display filial affection, and wil[l]fully neglects to lend support and maintenance, such

 parent relinquishes all parental claims and abandons the child.” Pratt, 257 N.C. at

 501; see also In re Apa, 59 N.C. App. 322, 324 (1982) (affirming an order terminating

 parental rights of the father based on abandonment where the court’s unchallenged

 findings provided that “except for an abandoned attempt to negotiate visitation and

 support, respondent ‘made no other significant attempts to establish a relationship

 with [the minor child] or obtain rights of visitation with [the minor child].’ ”).

¶ 15 Here, the court’s findings demonstrate that respondent had not seen the minor

 child, born in February 2014, since the minor child was four-to-six months old. Since

 the child was four-to-six months old but prior to respondent’s three-year

 incarceration, respondent did not contact the minor child. While incarcerated,

 respondent had a conduit to the minor child through respondent’s grandmother but

 nevertheless failed to send money, gifts, cards, or letters to the minor child. Upon his

 release from prison and prior to the filing of the termination petition, respondent

 made no attempt to communicate with the minor child. Despite repeated statements
 IN RE C.K.I.

 2021-NCSC-131

 Opinion of the Court

 that he intended to petition the courts for custody and visitation, respondent failed

 to do so. These facts evidence the lack of care, support, and maintenance that indicate

 abandonment. Accordingly, we uphold the trial court’s conclusion that respondent

 willfully abandoned the minor child and clear, cogent, and convincing evidence

 supports the termination of respondent’s parental rights. See N.C.G.S. § 7B-

 1111(a)(7).

¶ 16 Respondent does not challenge the trial court’s dispositional determination

 that it was in the minor child’s best interests that respondent’s parental rights be

 terminated. Therefore, we affirm the trial court’s order terminating respondent’s

 parental rights.

 AFFIRMED.